DAVID T. PROSSER, J.
¶ 44. (concurring). This is an unusual and difficult case that has divided the court. I write separately to explain my thinking.
¶ 45. The court finds no fault in the decision of the Board of Bar Examiners (Board) not to certify Joshua Jarrett unconditionally for membership in the Wisconsin bar. We also understand the Board's determination that Mr. Jarrett did not qualify for conditional admission under SCR 40.075 because " [o]nly an applicant whose record of conduct demonstrates documented ongoing recovery [from such problems as drug or alcohol dependency] and an ability to meet the competence and character and fitness requirements set forth in SCR 40.02 may be considered for conditional admission." SCR 40.075(1) (emphasis added). The Board reasoned that Mr. Jarrett did not meet the character and fitness requirements of the rule and that the rule has no provision for demonstrating the " ongoing recovery" of an applicant's character and fitness.
¶ 46. Admittedly, the Board did "not foreclose [Mr. Jarrett] from ever practicing law in Wisconsin." He could, the Board said, take a bar examination pursuant to SCR 40.04. But a majority of the court believes this option is not satisfactory on the facts of the case.
*587 ¶ 47. Mr. Jarrett graduated from the University of Wisconsin Law School in mid-2014. He has been out of law school now for two years. He presently lives in Maryland and works in a non-legal capacity in the District of Columbia.
¶ 48. To take the Wisconsin bar exam, Mr. Jarrett would have to come to Wisconsin, and he would likely have to enroll in a Wisconsin bar review course to prepare for the examination. Passing the exam would reaffirm his legal competence — which is not in dispute — but it would not necessarily enhance his "character and fitness" or assure that the Board would grant him certification.
¶ 49. As an alternative, Mr. Jarrett could take a bar exam in the District of Columbia, Maryland, or his home state of Georgia. Superficially, one of these options might appear more convenient, but they would all be time consuming and costly and would not assure his admission in one of those jurisdictions so long as the denial of his Wisconsin admission remained unchanged.
¶ 50. In my view, the fundamental question facing the court is whether it is possible to permit Mr. Jarrett to practice law now, under reasonable conditions, without depreciating the seriousness of his misconduct. If we answer this question "yes," we risk criticism that we have damaged the reputation and integrity of the legal profession. If we answer the question "no," however, we may be precluding Mr. Jarrett from ever practicing law.
¶ 51. There may be risks in our decision. But intelligent risk-taking often yields spectacular rewards. I believe Mr. Jarrett has the ability to be a superb attorney, and he has demonstrated the desire to *588 serve others. This court expects Mr. Jarrett to vindicate the high hopes we have in him. It will surely remember if he does not.
¶ 52. Courts cannot succeed for long if they are unable to leaven justice with mercy. By fashioning a unique form of conditional admission, we practice that principle in the present case.
¶ 53. For the reasons stated, I respectfully concur in the opinion of the court.
¶ 54. I am authorized to state that Justice ANN WALSH BRADLEY and Justice REBECCA G. BRADLEY join this concurrence.
¶ 55. (dissenting). I would affirm the final decision of the Board of Bar Examiners (Board) declining to certify Joshua E. Jarrett's character and fitness for admission to the Wisconsin bar. I am persuaded by the Board's finding that Mr. Jarrett's conduct in connection with his efforts in 2012 to secure summer employment with the New York City Law Department was both dishonest and deceptive and that such conduct demonstrates that Mr. Jarrett has acted in a manner that is not honest, diligent, or reliable. Coupled with the Board's finding that Mr. Jarrett was not credible at the eviden-tiary hearing before the Board and when claiming he forgot to disclose three fairly recent separate speeding violations from Georgia, Kentucky, and Wisconsin, I conclude that there are simply too many incidents in which Mr. Jarrett considered the truth optional when it was not to his advantage.